IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-501

Filed: 17 November 2015

Onslow County, No. 12 CVS 4285

LEO B. BILODEAU, and Wife, LINDA J. BILODEAU, LARRY W. SESSOMS, and
Wife, WANDA SESSOMS, J. WAYNE WILSON, and Wife, ROSE M. WILSON, and
DAVID J. BELL, and Wife, HAE SAN BELL, Plaintiffs,

v.

HICKORY BLUFFS COMMUNITY SERVICES ASSOCIATION, INC., MARK A.
POLLMAN, and Wife, LYNN PATE, Individually, and NICHOLAS F. LAUER, and
Wife, CELINE M. LAUER, Individually, and HICKORY BLUFFS COMMUNITY
SERVICES ASSOCIATION INCORPORATED BOARD OF DIRECTORS,
Defendants.


Appeal by plaintiffs from orders entered 9 January 2015 and 28 January 2015

by Judge Jack W. Jenkins in Onslow County Superior Court. Heard in the Court of

Appeals 22 October 2015.


> *Harvell and Collins, P.A., by Russell C. Alexander and Wesley A. Collins, for*
> *plaintiff-appellants.*
>
> *Ennis, Baynard & Morton, P.A., by B. Danforth Morton, for defendant-appellee*
> *Hickory Bluffs Community Services Association, Inc. and Hickory Bluffs*
> *Community Services Association Board of Directors.*


TYSON, Judge.


Plaintiffs appeal from the trial court's orders granting summary judgment in

favor of Defendants. We affirm.

I. Background

The Hickory Bluffs subdivision encompasses seventy-four lots and is located adjacent to Queens Creek near Swansboro, North Carolina. Hickory Bluffs Community Services Association, Inc. ("the Association"), a non-profit corporation, is the homeowners' association for the subdivision. All lot owners in Hickory Bluffs are members of the Association by virtue of their lot ownerships. The Association is governed by a seven member Board of Directors ("the Board"), pursuant to its bylaws.

Hickory Bluffs was created prior to the enactment of the North Carolina Planned Community Act set forth in North Carolina General Statutes Chapter 47F. The relevant provisions of the Planned Community Act apply to Hickory Bluffs pursuant to N.C. Gen. Stat. § 47F-1-102(c). The provisions of the Act listed in the statute apply to planned communities created in this State before 1 January 1999, unless the articles of incorporation or the declaration expressly provides to the contrary. N.C. Gen. Stat. § 47F-1-102(c) (2013); *see also* Patrick K. Hetrick, Of "Private Governments" and the Regulation of Neighborhoods: The North Carolina Planned Community Act, 22 Campbell L. Rev. 1, 51 (1999); James A. Webster, Jr.*, Webster's Real Estate Law in North Carolina* § 30A.09 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 6th ed. 2011) (discussing the applicability of the PCA to planned communities created prior to 1 January 1999).

The Hickory Bluffs Declaration of Covenants, Conditions and Restrictions ("the Declaration") was recorded in 1996, and establishes an Architectural Control

Committee ("the Committee"). Construction of any structure or improvement "on any lot" within the subdivision requires the lot owner to submit plans and specifications to the Committee and obtain the its written approval. The Committee is composed of three owners appointed by the Board, and serve at the Board's pleasure.

The developers of the subdivision constructed a common area dock onto Queens Creek, which includes ten boat slips. The dock is frequently submerged underwater at the higher tides. Up to ten lot owners may purchase exclusive use of a boat slip on the dock. A document entitled "Declaration of Assignment Restrictions Hickory Bluffs (Boatslips Only)" was recorded in 1997. The document allows individual boat slips to be assigned for exclusive use, but requires the dock to remain a common area, subject to the Association's maintenance and control. Assignments of the boat slips must be recorded, and boat slips may be assigned by their owner to another lot owner in the subdivision. A conveyance of a lot by the owner shall also convey the lot owner's boat slip.

Defendants, Nicholas and Celine Lauer, and Mark Pollman and wife, Lynn Pate, ("the slip owners"), purchased the rights to exclusive use of boat slips adjoining the community dock. In 2007, the slip owners submitted applications to the Hickory Bluff Architectural Control Committee to install boat lifts in their two slips. Their applications were approved by the Committee.

The slip owners intended to run electricity along the community dock from Pollman's meter base to power the boat lifts. This plan and method was discussed by the Hickory Bluffs Board of Directors on several occasions. The slip owners proposed to the Board that they would pay for half of the costs of running electricity and lighting to the end of the community dock, and the Association would pay the other half. In his proposal to the Board, Pollman estimated the cost to the Association for running electricity to the dock was approximately $4,300.00, plus an additional $20.00 per month for electricity to supply the dock lights.

On 9 February 2008, the Hickory Bluffs Board of Directors voted not to share in the cost of running electricity to the end of the dock. The vote solely concerned the cost sharing of running electricity to the dock and was not a vote on a motion to prevent the slip owners from running electricity to the dock at their own expense. The record shows the Board was aware the slip owners intended to install boat lifts and to run electricity to power them, and that the Committee had approved their plans.

On 19 February 2008, Pollman submitted a building permit application to Onslow County to install a boat lift. The application states Pollman is the landowner. The county issued permits for the construction of the boat lifts and the slip owners proceeded with the construction. The lifts consist of four wooden pilings placed inside the mooring area. Metal bars run across the tops of the pilings, which hold nylon

straps for lifting the boats. The pilings and boat lifts are not attached to the common area dock.

A new Board was elected by the Association's members in 2009. Plaintiff, Leo B. Bilodeau ("Bilodeau"), served as president. The Board learned the slip owners had installed permanent modifications to the community dock without Board approval, and the electrical wiring used to power the boat lifts had failed code inspection.

At the 10 October 2009 meeting of the Board, Bilodeau moved to remove Pollman and his wife, Lynn Pate, from the Board and to discontinue electricity to their boat lift. The Board voted to discontinue electricity to the dock "until [the slip owners] meet the county requirements and the Board agrees to run power to the dock." Following the 10 October 2009 meeting, the wiring remained installed on the dock with the power turned off.

On 5 November 2009, Bilodeau wrote to the county inspections department and stated that "[a]ttempts to electrify the Hickory Bluff CSA Community dock must cease." The county subsequently denied Pollman's permit to replace the wiring to the boat lifts until resolution of the issue between the Board and the slip owners over running wiring along the community dock. On 21 November 2009, the Board voted to refrain from running electricity to the boat lifts until resolution of the issue.

Bilodeau and Defendant David Bell removed the electric wiring from the dock with Pollman's permission. The lifts remained with no electric wiring attached. On

24 August 2010, the Board sent letters to the slip owners stating the construction of the boat lifts and "electrical apparatus" on the community dock was not approved by the Association, and demanding their removal within sixty days. On 6 October 2010, the attorney for the Association sent a letter to the slip owners' attorney demanding removal of the boat lifts and electrical modifications to the community dock. The letter stated the slip owners would accrue fines in the amount of $100.00 per day if the improvements were not removed by 31 October 2010.

### A. "Hearing" on Fines

On 9 January 2011, the Board sent Pollman and Pate letters requesting them to attend a hearing on 22 January 2011 at the Bear Creek Volunteer Fire Station to discuss fines for their failure to remove their boat lifts. On 21 January 2011, Bilodeau sent an email to the members of the Association notifying them that hearings on the slip owners' violations would be held the following day at the Bear Creek Volunteer Fire Station. The email further stated that the hearing was "not a meeting of the members and is not a Board meeting," and the sole purpose of the meeting was to discuss the slip owners' violations. The email informed the Association members that only the slip owners and Board members would be allowed to attend.

On 22 January 2011, Pollman and Pate arrived at the Bear Creek Fire Station for the meeting. The Lauers had requested Pollman and Pate to act on their behalf because they were outside of the country. Other members of the Association

attempted to attend the meeting to support Pollman's and Pate's position regarding the fines. One of the Board members stood at the door and denied them access into the meeting. Bilodeau described the members who had gathered at the fire station as an "unruly mob," and stated they were yelling and cursing. He testified the members were allowed to come inside the building one at a time. Pollman and Pate refused to come inside. Bilodeau testified the Board discussed the matter and proceeded with imposing the fine. The record does not contain any minutes or other records whatsoever of Board activities for this date.

The slip owners claim they were not provided written notification of any fines that were purportedly imposed against them as a result of any hearing conducted on 22 January 2011. Bilodeau testified that the slip owners were aware of the imposition of the fines through public knowledge or emails to the Association members. The record does not contain documentation of any written notice being sent to the slip owners regarding fines allegedly imposed.

### B. Defendants' Action

On 18 January 2011, the slip owners filed a complaint seeking a judicial declaration that the Association is without authority to require the removal of the boat lifts. They also sought to enjoin the Association from taking any action to prevent the slip owners from completing the re-wiring to provide electricity to their boat lifts, or any action to interfere with the slip owners' right to use and enjoy their

boat slips. Pursuant to a consent order entered 7 February 2011, the parties agreed the slip owners would not be required to remove their boat lifts and they would not deliver electricity to their boat lifts during the pendency of the suit.

A new Board of Directors was elected in May 2011. On 28 July 2011, the Board voted to cease imposition of the fines as of 28 March 2011. The slip owners requested the Board allow them to provide electricity to their boat lifts. The slip owners provided the Board with a report prepared by licensed professional engineer, which set forth the electrical specifications for wiring the boat lifts. The slip owners agreed to provide all documentation and permits necessary for the improvement. The Board received written approvals from over fifty-one percent of the subdivision's lot owners, and approved the easement.

C. Plaintiffs' Action

On 31 October 2012, Plaintiffs Bilodeau and other members of the Association, filed a complaint against the Association, the Board, and the slip owners. Plaintiffs alleged the slip owners had collectively incurred fines of $36,400.00 from 28 January 2011 until 28 July 2011. Plaintiffs sought an order directing the Board to perfect and foreclose liens against the property of the slip owners for the unpaid fines. In the alternative, Plaintiffs sought an order to declare the Association is under a legal obligation to perfect and foreclose liens for the unpaid fines. Plaintiffs also sought an order directing the slip owners to remove their boat lifts and the electrical wiring,

and to recover damages on behalf of the Association for the continuing trespass by the slip owners.

On 5 February 2014, while Plaintiffs' lawsuit was pending, the Board voted and resolved that no fines were properly assessed against the slip owners, and that any fines previously assessed were vacated.

### D.  Proceedings before the Superior Court

On 25 April 2014, Plaintiffs moved for partial summary judgment seeking judicial determination of several issues prior to trial.  On 6 August 2014, Defendants moved for partial summary judgment.  The trial court entered a written order, which determined: (1) the Board is empowered by N.C. Gen. Stat. § 47F-3-102(17) to "[e]xercise any . . . powers necessary and proper for the governance and operation of the [A]ssociation;" (2) powers necessary and proper for the governance and operation of the Association include the power to levy assessments and fines; (3) concomitant with the power to levy assessments and fines is the power to alter or rescind assessments and fines, provided that such action is necessary for the Association's governance and operation; (4) because the dock is located within a common area and is not part of a "lot," the Declaration did not give the Architectural Control Committee the power to approve or deny the boat lift applications; (5) the Board has not formally approved the boat lifts; (6) the Board is empowered to call a special meeting at any time to formally and retroactively approve of the boat lifts or demand their removal

if such action is necessary and proper for the governance and operation of the Association; (8) the Board was authorized to impose fines against the slip owners for failure to properly procure Board approval for installation of the boat lifts; (9) the Board did not comply with the provisions of N.C. Gen. Stat. § 47F-3-107.1 in attempting to impose fines because the slip owners were not provided an opportunity to be heard and present evidence; and (10) presuming *arguendo* the Board imposed fines consistent with the law, the fines were subsequently rescinded and vacated on 5 February 2014.

On 14 January 2015, after entry of the order on partial summary judgment, the Board "formally and retroactively approve[d] the boat lifts installed in the slips assigned to Mark Pollman and Lynn Pate and to Nicholas and Celine Lauer and further formally and retroactively approve[d] electrical wiring to said boatlifts."

The case was scheduled for trial on 20 January 2015. Defendants presented the court with the Board's resolution retroactively authorizing the installation of the boat lifts and electrical wiring. Defendants moved for a summary judgment ruling that there are no remaining issues of material fact to be resolved in the dispute based upon the Board's rescission of the fines. The court concluded no genuine issues of material fact existed, granted summary judgment in favor of Defendants, and dismissed all claims. Plaintiffs appeal from the orders on summary judgment.

## II.  Issues

Plaintiffs argue the trial court erred by granting summary judgment in favor of Defendants where genuine issues of material fact exists to whether: (1) the Board complied with N.C. Gen. Stat. § 47F-3-107.1 in imposing fines on the slip owners; and, (2) the Board was permitted to rescind the fines imposed on the slip owners under the language of the Association's governing documents.

### III. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013); *see Draughon v. Harnett Cnty. Bd. Of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). In a motion for summary judgment, the evidence presented to the trial court must be viewed in a light most favorable to the non-moving party. *In re Will of Jones,* 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

> An issue is "genuine" if it can be proven by substantial evidence and a fact is "material" if it would constitute or irrevocably establish any material element of a claim or a defense.
>
> A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her

claim. Generally this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law. If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so.

*Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations and internal quotation marks omitted). As our Supreme Court stated, "[t]he purpose of summary judgment can be summarized as being a device to bring litigation to an early decision on the merits without the delay and expense of a trial where it can be readily demonstrated that no material facts are in issue." *Kessing v. Nat'l Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971). This Court reviews an order granting summary judgment *de novo. In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576.

IV. Notice

Defendants argue the trial court erred by concluding the imposition of fines upon the slip owners was improper under N.C. Gen. Stat. § 47F-3-107.1. We disagree.

N.C. Gen. Stat. § 47F-3-107.1 is entitled "Procedures for fines and suspension of planned community privileges or services." The statute provides in pertinent part:

> Unless a specific procedure for the imposition of fines or suspension of planned community privileges or services is provided for in the declaration, a hearing shall be held before the executive board or an adjudicatory panel appointed by the executive board to determine if any lot owner should be fined or if planned community privileges

> or services should be suspended pursuant to the powers granted to the association in G.S. 47F-3-102(11) and (12). Any adjudicatory panel appointed by the executive board shall be composed of members of the association who are not officers of the association or members of the executive board. The lot owner charged shall be given notice of the charge, *opportunity to be heard and to present evidence, and notice of the decision.*

N.C. Gen. Stat. § 47F-3-107.1 (2013) (emphasis supplied).

The Board purportedly scheduled a hearing for 22 January 2011 at the Bear Creek Volunteer Fire Station. The Board was to consider whether to impose fines on the slip owners for failure to properly procure the Board's approval prior to the installation of the boat lifts. The e-mail noticing the hearing stated, "[n]o persons other than Mr. and Mrs. Lauer, Mr. Pollman, Mrs. Pate and the members of the Board will be allowed to attend this hearing." The trial court found this notification, on its face, inconsistent with the due process mandates of N.C. Gen. Stat. § 47F-3-107.1. The court determined the imposition of fines upon the slip owners was not "consistent with the procedures set forth by law."

Plaintiffs claim Pollman and Pate arrived at the fire station with an "unruly mob of supporters" for the hearing on 22 January 2011. The Board allowed witnesses to come inside one at a time to maintain order. The slip owners intended to present at least three witnesses during the hearing. Plaintiffs presented evidence that members, who were not "combative or unruly," were permitted to come inside and speak with the Board members.

Pollman and Pate refused to come inside the fire station. Pollman was told that if he refused to come inside, the Board would impose the fines and the fines would be final. Bilodeau believed the statement to Pollman and Pate that fines would be imposed, if they refused to come into the hearing, was sufficient notice of the imposition of fines under the Planned Community Act. He testified, "[i]n addition to that oral notice, I believe that the Defendants were notified or on notice of the fine in other ways, such as public knowledge, or via e-mails from community members."

Plaintiffs presented evidence the Board voted to impose the fines after Pollman and Pate refused to enter the building for the hearing. The record contains no minutes or written documentation of the meeting. On 11 February 2011, *after* Plaintiffs assert they had voted and imposed the fines, the Board sent the Association members an e-mail regarding the consent order entered on 7 February 2011. The Board informed the Association members that "nothing in the Court Order prevents the Association from proceeding with a hearing on whether to fine the [slip owners] for their installation of the boat lifts without the Association's approval."

N.C. Gen. Stat. § 47F-3-107.1 requires the Board to provide the member with "notice of the decision" to impose fines. The statute does not require written notice. The Hickory Bluffs bylaws clarify and expand upon the requirements of the statute. The bylaws provide that after the hearing, the Board *shall* determine, *in writing*, to waive the default in whole or in part, to extend the time within which the default may

be cured, to proceed immediately with a fine or penalty, or to exercise any remedy. The bylaws further provide, "[t]he Board *shall* mail to the defaulting member a copy of its determination." (Emphasis supplied).

"To the extent not inconsistent with the provisions of [the Planned Community Act], the declaration, bylaws, and articles of incorporation form the basis for the legal authority for the planned community to act as provided in the declaration, bylaws, and articles of incorporation, and . . . are enforceable by their terms." N.C. Gen. Stat. §47F-1-104(a) (2013). The provision in the bylaws requiring written notice to be mailed to the lot owner does not alter or conflict with the notice requirement under N.C. Gen. Stat. § 47F-3-107.1.

The record shows no written notice regarding the Board's imposition of fines was mailed to the slip owners as required by the bylaws. Presuming *arguendo* the slip owners were provided a proper opportunity to be heard and present evidence before the Board on 22 January 2011 and the Board did, in fact, impose fines, the Board failed to provide the slip owners with the required written notice to impose fines under the bylaws. The trial court did not err in determining no genuine issue of material fact exists to whether the Board properly imposed fines upon the slip owners and provided the required written notice. This argument is overruled.

V. Authority to Rescind the Imposition of Fines

Plaintiffs argue the trial court erred by granting partial summary judgment in favor of Defendants and assert genuine issues of material fact exist to whether the Board had authority to rescind and vacate fines previously imposed on the slip owners. We disagree.

Plaintiffs allege the Lauers, Pollman and Pate incurred fines of $100.00 per day from 28 January 2011 until 28 July 2011. According to Plaintiffs' complaint, filed in 2012, each couple's fine totaled $18,200.00. On 5 February 2014, the Board called a special meeting. A motion was made as follows:

> It is moved that the Board resolve that to the best of its knowledge and understanding no fines were properly imposed against Mark Pollman, Lynn Pate, Nicolaus Lauer or Celine Lauer in January 2011 or at any other time relating to the installation of electrical writing or boat lifts on the community dock or in the slips assigned to Mark Pollman, Lynn Pate, Nicolaus Lauer or Celine Lauer.
>
> It is further moved that the Board resolve that to the extent that any fines were imposed in accordance with the procedural requirements imposed by North Carolina Statutes and the governing documents of the Hickory Bluffs Community Association, Inc. against Mark Pollman, Lynn Pate, Nicolaus Lauer or Celine Lauer, such fines were inappropriate and should be vacated and that the Board does therefore decree that any such fines are now and forever vacated in their entirety.

The six board members present voted unanimously in favor of the motion. Pollman, the seventh Board member, recused himself from the vote.

The trial court determined that "even if any fines properly were imposed," they "have been rescinded by the Board, are no longer enforceable, and no longer shall be deemed a lien upon any property in Hickory Bluffs." In a footnote in the order, the trial court stated, "[a]s a general precept, the power of an entity to take action inherently includes the power to alter or rescind such actions once taken." Otherwise, the trial court explained, a governing board would be precluded from correcting mistakes, settling financial disputes via compromise, and amending decisions when confronted with changed circumstances or newly discovered information. We agree.

The Planned Community Act grants property owners' associations the power to "impose reasonable fines or suspend privileges or services provided by the association (except rights of access to lots) for reasonable periods for violations of the declaration, bylaws, and rules and regulations of the association." N.C. Gen. Stat. § 47F-3-102(12) (2013). Property owners' associations may also "[e]xercise any other powers necessary and proper for the governance and operation of the association." N.C. Gen. Stat. § 47F-3-102(17) (2013).

Under N.C. Gen. Stat. § 47F-3-108(c) (2013), "[e]xcept as otherwise provided in the bylaws, meetings of the association and the executive board shall be conducted in accordance with the most recent edition of Robert's Rules of Order Newly Revised." Robert's Rules of Order allow a board of directors to rescind action previously taken:

> *Rescind* – also known as *Repeal* or *Anul* – is the motion by which a previous action or order can be canceled or

> countermanded. The effect of a *Rescind* is to strike out an entire main motion, resolution, order or rule that has been adopted at some previous time.

Henry M. Robert, ROBERT'S RULES OF ORDER 304 (Sarah Corbin Robert et al., eds., 11th ed. 2011).

The Hickory Bluffs governing documents do not state whether the Board may rescind actions it has previously taken. Plaintiffs cite N.C. Gen. Stat § 47F-3-107.1 and the Hickory Bluffs Declaration and bylaws in asserting the Association had a duty to enforce fines by perfecting and foreclosing liens. The statute provides that if the Board decides to impose fines after a properly noticed hearing, "[s]uch fines shall be assessments secured by liens under G.S. 47F-3-116." N.C. Gen. Stat. § 47F-3-107.1 (2013).

The Hickory Bluffs Declaration states that any assessment not paid when due is delinquent, and the Association "shall file a lien of record against any lot where there remains an assessment unpaid for a period of thirty (30) days or longer." The bylaws state, "[a]ny fine, costs or expenses hereunder shall be enforced as if an assessment lien." Further, "it shall be the duty of the Board of Directors to . . . foreclose the lien, and sell under a power of sale . . . any property for which assessments are not paid within thirty (30) days after due date."

Plaintiffs argue that once fines are imposed, the Board is without authority to rescind them under the Association's governing documents, and must pursue a lien

against the fined member's property. Defendants assert the provisions cited by Plaintiffs instruct the Board on the manner in which fines should be collected, rather than providing an intractable mandate preventing the Board from ever rescinding fines imposed upon lot owners.

The provisions of the governing documents cited by Plaintiffs, in conjunction with N.C. Gen. Stat. § 47F-3-102(17) and Robert's Rules of Order cannot be interpreted to prevent the Board from ever revising or rescinding fines previously imposed or re-visiting any Board action previously taken. To hold otherwise would require the Board to uphold fines which, as here, may have been improperly or illegally imposed, and to foreclose on the impermissibly fined lot owner's property. This interpretation would be unconscionable and forever bind a future Board to some action, rightfully or wrongfully, taken by a previous Board.

In its January 2014 resolution formally and retroactively authorizing the boat lifts, the Board noted: (1) the Board believes that prior to and at the time the boat lifts and electrical wiring were initially installed, it was the intention of the serving Board members to authorize the installation; (2) the slip owners have given valuable consideration for the use of their boat slips and boat lifts are appropriate for the full enjoyment of the slips; (3) the slip owners have incurred significant expense in installing the lifts and wiring; (4) the lifts and wiring have been the subject of considerable litigation at the expense of the Association and it will be "conducive to

the peaceful relations of lot owners" to formally and retroactively approve the boat lifts and wiring with expectation that the ongoing litigation would cease; and (5) the electrical wiring was inspected by a licensed electrical engineer who opined it was properly installed and did not present a safety hazard. The Board considered these factors in properly exercising its powers as are "necessary and proper for the governance and operation of the association." N.C. Gen. Stat. § 47F-3-102(17). We do not address any issue of whether the Association would have authority to enforce or foreclose a purported lien filed against a property owner's lot for conduct or actions in common areas which do not "touch and concern" the lot itself.

Presuming the Board properly imposed fines on the slip owners in January of 2011, the Board also possessed the authority to rescind those fines, and exercised that authority. The trial court did not err in determining no genuine issue of material fact existed of whether the Board had the authority to rescind the fines, even if the fines had been properly imposed after sufficient prior notice, opportunity to be heard and written notice of the decision tendered. This argument is overruled.

## VI. Conclusion

Where the record is devoid of any evidence the slip owners were provided with written and mailed notice of any fines imposed upon them following the 22 January 2011 hearing, the trial court properly concluded the purported fines were not properly imposed.

Even if fines had been properly imposed upon the slip owners, the Board possessed the authority under the Planned Community Act and Robert's Rules of Order to later rescind the fines. The trial court properly awarded summary judgment in favor of Defendants. The judgments appealed from are affirmed.

AFFIRMED.

Judges McCULLOUGH and DIETZ concur.